Roy **BEATTY** and Vanda Beatty, On Behalf of Themselves and All Others Similarly Situated, Appellants–Plaintiffs,

v.

**LIBERTY MUTUAL INSURANCE GROUP, and Its Affiliates and Subsidiaries, Including Liberty Mutual Fire Insurance Company, Indiana Insurance Company, Wausau Insurance Company, Peerless Insurance Company, Hawkeye–Security Insurance Company, First Liberty Insurance Corporation, Liberty Insurance Corporation and John Doe Insurance Companies, Doing Business in The State of Indiana, Appellees–Defendants.**

No. 49A02–0712–CV–1037.

Court of Appeals of Indiana.

Sept. 23, 2008.

John C. Green, Michael E. Simmons, Laura E. Trulock, Hume Smith Geddes Green & Simmons, LLP, Indianapolis, IN, Attorneys For Appellants.

Susan L. Williams, Douglas W. Langdon, Frost Brown Todd LLC, New Albany, IN, John Trimble, Lewis Wagner, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Roy and Vanda Beatty appeal the trial court's order dismissing their action against Liberty Mutual Fire Insurance Company ("Liberty Mutual"), Liberty Mutual Insurance Group, Indiana Insurance Company, Wausau Insurance Companies, Peerless Insurance Company, Hawkeye–Security Insurance Company, First Liberty Insurance Corporation, and John Doe Insurance Companies (collectively, with the exception of Liberty Mutual, referred to as "the Insurance Defendants"). The Beattys raise five issues for our review. However, we consider only the question of whether the Beattys can maintain this action in the Marion Superior Court or whether this action must be dismissed because the same or a substantially similar action is pending in the Marion Circuit Court.

We affirm.

### FACTS AND PROCEDURAL HISTORY

The facts relevant to this appeal were stated in our prior opinion in *Liberty Mutual Fire Insurance Co. v. Beatty*, 870 N.E.2d 546, 547–48 (Ind.Ct.App.2007) ("*Beatty I* "):

The Beattys had an automobile liability policy and an umbrella policy issued by Liberty Mutual. Several years after the Beattys purchased their umbrella policy, and during the active coverage period,

Liberty Mutual sent Roy Beatty a document that stated in pertinent part:

INDIANA UNINSURED/UNDERINSURED MOTORISTS COVERAGE IMPORTANT COVERAGE INFORMATION

* * *

COVERAGE SELECTIONS

Listed below are the available limits of Uninsured Motorists Bodily Injury/Underinsured Motorist Bodily Injury coverage and the additional premium charge associated with each selection. The rates are on a per vehicle basis. Coverage may be selected in an amount less than or equal to your liability limit. $1,000,000 in coverage will be applied, unless this coverage is waived. Please indicate your selection below.

[ ] I reject UM/UIM coverage.
[ ] $1,000,000          $ 62 per vehicle
[ ]   2,000,000          $ 96 per vehicle
[ ]   3,000,000          $136 per vehicle

* * *

I have read the preceding material and understand that any rejection of these coverages shall apply to all renewals of my policy, regardless of any interim charges, until I request the coverage in writing.

* * *

Appellant's App. at 244.

Unsure of the implications of the document, Roy called his Liberty Mutual agent to inquire whether any additional UM/UIM coverage was necessary or recommended. The agent told him that he did not need any more coverage and he should just sign the form and send it back. On July 7, 2003, Roy put an X next to the line "I reject UM/UIM coverage," signed and dated the form, and sent it back. *Id.*

Roy was severely injured in a collision with an uninsured motorist in May 2005. He made a claim under both his automobile and umbrella policies. Liberty Mutual paid the coverage under the automobile policy ($250,000), but denied coverage under the umbrella policy, and the present action ensued. Both Liberty Mutual and the Beattys moved for summary judgment, and the trial court denied Liberty Mutual's motion and granted the Beattys' motion. The trial court found that the purported rejection was ineffective, and the UM/UIM was in effect at the time of the collision. Liberty Mutual now appeals.

(Footnote omitted; other omissions original.)

On appeal, we discussed Indiana law pertaining to UM/UIM insurance policies and affirmed the trial court, stating as follows:

Here ... UM/UIM coverage was already provided under the Beattys' umbrella policy. That is, from the date of the issuance of their policy, the Beattys had existing UM/UIM coverage under their umbrella policy for which Liberty Mutual was charging no additional premium. The question before us is whether the document, which Liberty Mutual sent several years after the policy was originally purchased, and which Roy signed, excuses Liberty Mutual from providing UM/UIM coverage under the Beattys' umbrella policy.

\* \* \*

We find the language of the purported rejection was ambiguous at best [and] misleading at worst. It can reasonably be construed to effect an immediate cancellation of the UM/UIM coverage which was already included in the coverage which the Beattys had purchased and for which they had paid a premium.

Alternatively, it can be construed to constitute a rejection of such coverage at the time of the next renewal. Finally, it can be construed, as the Beattys and [ ] Liberty Mutual's agent construed it, as an offer for UM/UIM coverage in addition to the UM/UIM coverage that the Beattys already had and for which an additional premium would be charged.

Liberty Mutual suggests that Roy rejected any and all UM/UIM coverage available under the policy. If such were the case, Liberty Mutual offered no consideration to change and remove a material element, i.e., the existing $1,000,000 UM/UIM coverage, of the Beattys' umbrella policy. *See Henthorne v. Legacy Healthcare, Inc.,* 764 N.E.2d 751, 759 (Ind.Ct.App.2002) (written modification of contract requires all essential terms of contract, including consideration). Instead, the rejection was filled out, and the premium remained the same.

Additionally, Liberty Mutual did not change the express language of the Beattys' policy at the time the document was executed or at the time the policy was renewed in October 2003, and again in October 2004. *Cf.* Appellant's App. at 238–43. Had Liberty Mutual desired to exclude any and all UM/UIM coverage based on the *DePrizio* decision, it should have either: 1) secured the written waiver of coverage required under the statute and included the waiver within the policy prior to the commencement of coverage; or 2) if Liberty Mutual wanted to remove UM/UIM coverage during the policy's term, it should have proposed a modification to such effect and offered to reduce the premium to reflect the removed coverage. In either case, it would be clear that the existence or nonexistence of UM/UIM coverage was a negotiated term of the policy.

Appellate courts consistently instruct insurance companies that terms of a policy will be interpreted liberally and read favorably to the insured. *See DePrizio,* 705 N.E.2d at 459–60. Our Supreme Court stated, "[e]ven where a given policy fails to provide such [UM/UIM] coverage, the insured is entitled to its benefits unless expressly waived *in the manner provided by law.*" *Id.* at 460. More particularly, this court has expressed that IC 27-7-5-2 was a remedial measure taken in favor of the insured. *State Farm Mut. Auto. Ins. Co. v. Steury,* 787 N.E.2d 465, 470 (Ind.Ct. App.2003), *trans. dismissed.* Liberty Mutual's presentation of an ambiguous rejection form to Roy during the policy's term that asks whether he would like [to] give up existing coverage for which he has already paid, without consideration[,] was ineffective to waive UM/UIM coverage. Accordingly, we affirm the trial court's finding that the umbrella policy provided UM/UIM coverage, and its entry of summary judgment in favor of the Beattys and against Liberty Mutual.

*Id.* at 550–51 (footnote omitted; some alterations original). The Beattys' action in the Marion Circuit Court was filed on June 1, 2005, and includes a claim of bad faith against Liberty Mutual. Our opinion in *Beatty I* was handed down on July 24, 2007, and that litigation is still on-going in that court.

On May 25, 2007, while *Beatty I* was pending on appeal, the Beattys filed a class-action complaint against Liberty Mutual and the Insurance Defendants in the Marion Superior Court. The Beattys alleged that Liberty Mutual and the Insurance Defendants committed "misrepresen-

tation and fraud upon the Plaintiffs as policyholders" and wrongful conduct in their handling of the umbrella policy. Appellant's App. at 12. The Beattys also alleged that they were appropriate representatives of a proposed class of similarly situated plaintiffs.

On July 30, 2007, Liberty Mutual and the Insurance Defendants filed separate motions to dismiss in the Marion Superior Court proceedings. Liberty Mutual argued that the Beattys had failed to state a claim upon which relief could be granted, that the Beattys lacked standing, that the same claims were pending in another state court, and that the doctrine of res judicata precluded the Beattys' action. The Insurance Defendants alleged lack of standing, failure to state a claim upon which relief could be granted, and failure to plead fraud with specificity.[1] Both Liberty Mutual and the Insurance Defendants also sought denial of the proposed class certification on grounds that the Beattys were not appropriate class representatives.

On August 21, 2007, the Beattys requested permission to file an amended complaint to include additional named defendants. The Beattys did not seek to amend their complaint in any other way. The court granted the Beattys' request on September 4, 2007, and scheduled a hearing and oral argument on the motions to dismiss for November 1. On November 7, the trial court issued its order on the motions to dismiss, granting them in all respects. The putative class remained uncertified. This appeal ensued.

**DISCUSSION AND DECISION**

■ The Beattys raise five purported

---

1. Liberty Mutual subsequently joined in the Insurance Defendants' defense that the Beat-

tys failed to allege fraud with specificity.

grounds of trial court error.[2] However, we consider only the question of whether this action in the Marion Superior Court is separate and distinct from the case pending in the Marion Circuit Court, or whether the two actions are the same or substantially the same. On that issue, the Beattys contend that their action in the Marion Superior Court is "separate and distinct" and not precluded by their action in the Marion Circuit Court. Specifically, they argue:

> A finding of bad faith on the part of Liberty Mutual in processing the 2005 collision claim [in the Marion Circuit Court] will not address at all the 2003 wrongful conduct related to the improper attempt to induce policyholders to forego coverage and protection which was already provided as a matter of law. The two events of 2003 and 2005 are separate and distinct; the factual basis supporting the claims of bad faith in each instance are entirely different; and the damages recoverable for each do not overlap. Consequently, it is clear the two claims do not constitute the same action pending in two different counts [sic] at the same time....

Appellant's Brief at 20. Liberty Mutual responds that the trial court did not err in granting its motion to dismiss in accordance with Indiana Trial Rule 12(B)(8). We must agree with Liberty Mutual.

Indiana Trial Rule 12(B)(8) permits the dismissal of an action when "[t]he same action [is] pending in another state

court of this state." Trial Rule 12(B)(8) implements the general principle that, when an action is pending in an Indiana court, other Indiana courts must defer to that court's authority over the case. *See LTL Truck Serv., L.L.C. v. Safeguard, Inc.*, 817 N.E.2d 664, 671 (Ind.Ct.App. 2004). The rule applies where the parties, subject matter, and remedies are precisely the same, and it also applies when they are only substantially the same. *Id.* Our review of the trial court's dismissal of the Beattys' complaint under Trial Rule 12(B)(8) is *de novo. See Kentner v. Ind. Pub. Employers' Plan, Inc.*, 852 N.E.2d 565, 570 (Ind.Ct.App.2006), *trans. denied.*

Liberty Mutual argued to the trial court, and asserts on appeal, that the Beattys' current action against it in the Marion Superior Court should be dismissed because of the action pending in the Marion Circuit Court. In support of its position, Liberty Mutual cites *Crawfordsville Apartment Co. v. Key Trust Co.*, 692 N.E.2d 478, 480–81 (Ind.Ct.App.1998). In *Crawfordsville Apartment*, we stated the facts as follows:

> The record shows that sometime in 1991 Key Trust (formerly known as Amerifirst Florida Trust Company) sued a person by the name of Robert L. Wendt. On August 15, 1991[,] Key Trust filed a *lis pendens* notice asserting that Wendt owned an equitable interest in certain real estate. Thereafter on December 22, 1993[,] Key Trust obtained a judg-

---

**2.** In addition to the issue we address, the Beattys assert the following: (1) that the trial court erred in dismissing their complaint under Trial Rule 12(B)(6); (2) that the court erred in concluding that the Beattys' complaint was barred by res judicata; (3) that the court erred in dismissing the proposed class action for lack of standing; and (4) that the court erred in determining that the Beattys failed to state fraud with specificity, as required by Trial Rule 9(B). We agree with the

Beattys' general assertion that, had their complaint failed to state a claim upon which relief could be granted, under Trial Rule 12(B)(6), the Beattys should have been permitted to timely file an amended complaint. *See, e.g., Baker v. Town of Middlebury*, 753 N.E.2d 67, 74 (Ind.Ct.App.2001) (quoting Ind. Trial Rule 12(B)(6)), *trans. denied.* However, as discussed herein, no amendment to the Beattys' complaint could cure the Trial Rule 12(B)(8) defect.

ment against Wendt in the amount of $362,097.23. On or about March 22, 1996, Key Trust filed a petition for proceedings supplemental to execution in the Carroll Circuit Court. Wendt was named as judgment-defendant and Apartment Company, which is a limited partnership, was named as garnishee-defendant.[3] Among other things, the petition alleged that during discovery a general partner in the limited partnership asserted that Wendt owned a twenty percent interest in Apartment Company. In accordance with Ind. Trial Rule 69(E) the petition sought an order directing Wendt to appear before the court and answer as to any non-exempt property which could be applied to the outstanding judgment. It also sought an order directing Apartment Company to appear before the court "to answer under oath as to partnership interests, or other non-exempt property" which is due or to become due to Wendt.

> FOOTNOTE 3: The petition also named the Security Abstract & Title Company, Inc. as an additional garnishee-defendant. Apparently Apartment Company had recently sold the subject real estate and the proceeds were being held in escrow by the Title Company.

Shortly thereafter on March 27, 1996 Apartment Company filed a complaint for declaratory judgment against Key Trust in the Montgomery Circuit Court. . . . Among other things the complaint alleged that Robert Wendt did not have an interest in the subject real estate. The complaint sought a judgment declaring as much and also sought a judgment declaring that Key Trust has no such interest. In response Key Trust filed a motion to dismiss under provisions of T.R. 12(B)(8), arguing that the same action was pending in the Carroll Circuit Court.

692 N.E.2d at 479 (citation to the record and some footnotes omitted).

The trial court dismissed Apartment Company's declaratory judgment request pursuant to Trial Rule 12(B)(8). *Id.* This court affirmed, holding that the two parties were at the same time involved in proceedings supplemental in the Carroll Circuit Court. In so holding, we stated, in relevant part, as follows:

> Apartment Company also insists that the subject matter in the two cases [is] not the same. According to Apartment Company the issue to be determined in the supplemental proceedings is whether Wendt owned an interest in Apartment Company, as a limited partnership. On the other hand, Apartment Company maintains, the issue to be determined in the declaratory judgment action is whether Trust Company wrongfully impaired the title to the subject real estate.

> We first observe that even as framed by Apartment Company the issue in both courts while not precisely the same does overlap to some extent. For example the issue of whether Key Trust wrongfully impaired title to Apartment Company property is dependant upon whether Wendt owned an interest in the property in the first place. Should the Carroll Circuit Court determine that Wendt owned no such interest, then resolution of that issue is determinative of the outcome in the Montgomery Circuit Court. In any event, regardless of how the issue is framed, for purposes of 12(B)(8) the question is whether the "subject matter" is either precisely or only substantially the same. Here, the subject matter in both actions concerns a specific parcel of real estate owned by Apartment Company, and involves the question of whether Wendt owns an in-

terest therein. In both cases the subject matter is precisely the same.

*Crawfordsville Apartment Co.,* 692 N.E.2d at 481.

Here, the Beattys sued Liberty Mutual and two other defendants in the Marion Circuit Court in 2005. Against Liberty Mutual, the Beattys alleged the following:

> At all times material hereto, Liberty Mutual Fire Insurance Company had issued a policy of automobile insurance coverage to Roy Beatty and Vanda Beatty, including coverage for uninsured and/or underinsured motorist insurance which would be applicable to the claims arising in favor of Roy Beatty and Vanda Beatty and against [the other defendants,] Hiram Banda, III and Mildred Evans.

Appellant's App. at 37. The Beattys requested relief "in an amount which will fully and fairly compensate them for all injuries, losses, damages, expenses, costs, punitive damages and other amounts recoverable" against Liberty Mutual and the other defendants. *Id.* at 38.

As an initial matter, it is clear that the parties in both the Marion Circuit Court action and the Marion Superior Court proceedings, for our purposes, are the same. In *Crawfordsville Apartment,* we recognized that each action contained other parties, but that the presence of those other parties was irrelevant to the Trial Rule 12(B)(8) requirement that each action contain the same parties. 692 N.E.2d at 480 (discussing *State ex rel. Int'l Harvester Co. v. Allen Circuit Court,* 265 Ind. 175, 178–79, 352 N.E.2d 487, 489–90 (1976)). Likewise, here, the fact that the Beattys have named defendants other than Liberty Mutual in each of the two actions does not preclude operation of Trial Rule 12(B)(8). *See id.*

During the course of the Marion Circuit Court proceedings, the Beattys asserted that they were entitled to at least part of the $1,000,000 policy limit provided under their umbrella policy with Liberty Mutual. Liberty Mutual argued on summary judgment that the Beattys rejected the applicable coverage, but the trial court disagreed. On appeal in *Beatty I,* this court affirmed the trial court's decision and held that the Beattys did not reject UM/UIM coverage under the umbrella policy. Subsequently, the Beattys amended their complaint to include an allegation of bad faith against Liberty Mutual for its handling of the Beattys' insurance claim.[3]

In 2007, while *Beatty I* was pending before this court, the Beattys filed the current action against Liberty Mutual in the Marion Superior Court. In their amended complaint, the Beattys asserted the following: (1) that Liberty Mutual issued to the Beattys an umbrella policy for UM/UIM coverage; (2) that, thereafter, Liberty Mutual issued to the Beattys and other policyholders an offer for UM/UIM coverage with reference to the umbrella policy; (3) that the subsequent offer "failed to comply with Indiana statutes pertaining to [UM/UIM] coverage" and that such offer "was misleading and constituted misrepresentation and fraud" upon the policyholders, *id.* at 172; (4) that Liberty Mutual "may have wrongfully denied [UM/UIM] coverage claims asserted with respect to umbrella/excess insurance policies by . . . failing to reveal the existence of such coverage as required by the duties of good faith an[d] fair dealing," *id.;* (5) that the conduct of Liberty Mutual and the Insurance Defendants caused the Beattys

---

**3.** The appendix does not contain the amended complaint in which this allegation is made. Nonetheless, it is not disputed by the parties that the Beattys amended their complaint in the Marion Circuit Court to include this charge.

and similarly-situated plaintiffs specific damages; and (6) that, as a result, the Beattys and similarly-situated plaintiffs were entitled to "an amount sufficient to compensate all of said Plaintiffs ... for damages caused by Defendants' wrongful conduct, bad faith, fraud and misrepresentation," *id.* at 174.

Although the allegations in the two courts are not identical, as in *Crawfordsville Apartment* there is clear and substantial overlap in the subject matter. The Beattys' allegations of bad faith in the Marion Circuit Court are centered on Liberty Mutual's handling of the umbrella policy. And, likewise, the Beattys' current allegations against Liberty Mutual in the Marion Superior Court are focused on the umbrella policy and Liberty Mutual's attempts to deny UM/UIM coverage under that policy.

Thus, the subject matter of both complaints against Liberty Mutual concerns a specific insurance policy and Liberty Mutual's conduct regarding that policy. The Beattys' claims in both courts arise from the same transaction or occurrence, or the same series of transactions or occurrences. *See Centex Home Equity Corp. v. Robinson,* 776 N.E.2d 935, 944–45 (Ind.Ct.App. 2002) ("two separate foreclosure actions involving the same property and the same parties should not proceed simultaneously in two different courts.... The modern procedural mechanism for correcting this kind of irregularity is Trial Rule 12(B)(8) ...."), *trans. denied.* That is, the Beattys' two claims each arise from the Beattys' contractual relationship with Liberty Mutual.

Further, despite the Beattys' arguments to the contrary, the outcome in the Marion Circuit Court will affect the Marion Superior Court proceedings. For example, a finding by the Marion Circuit Court that Liberty Mutual acted in accordance with the law in handling the Beattys' insurance claim would collaterally estop the Beattys from pursuing their allegations in the Marion Superior Court. Likewise, if the Circuit Court determined that Liberty Mutual acted unlawfully, Liberty Mutual could not argue otherwise in the Superior Court. Thus, whether the Marion Circuit Court determined that Liberty Mutual did or did not act in bad faith, that judgment would collaterally estop one of the parties from proceeding in the Marion Superior Court. Trial Rule 12(B)(8) is meant to avoid the risk of conflicting judgments or other confusion that can result from two courts exercising simultaneous jurisdiction over the same or substantially same action. In sum, the rule precludes the same parties from litigating the same issues in two Indiana courts at the same time.

The Marion Superior Court properly granted Liberty Mutual's motion to dismiss under Trial Rule 12(B)(8). The parties, the Beattys and Liberty Mutual, are the same parties to the action in the Marion Circuit Court. *See Crawfordsville Apartment Co.,* 692 N.E.2d at 480 (discussing *Int'l Harvester Co.,* 352 N.E.2d at 489–90). The subject matter of the Beattys' actions against Liberty Mutual are substantially the same in both courts. While the claims in the Marion Superior Court are more broadly stated, the two actions are substantially the same. *See LTL Truck Serv.,* 817 N.E.2d at 671. And the remedy the Beattys' seek against Liberty Mutual in both courts, money damages for Liberty Mutual's conduct surrounding the UM/UIM coverage of the umbrella policy, is also the same. *See, e.g., Grand Trunk W. R.R. v. Kapitan,* 698 N.E.2d 363, 367 (Ind.Ct.App.1998). Accordingly, we must affirm the trial court's dismissal of the Beattys' action against Liberty Mutual under Trial Rule 12(B)(8).

Because the Beattys may not maintain their action against Liberty Mutual in the Marion Superior Court, their complaint against the Insurance Defendants and their request for class-action certification in that court must likewise be dismissed. Specifically, the Beattys have lost their standing to maintain their Marion Superior Court action. "Standing requires a concrete adversity between the parties, that is, that the defendant caused plaintiff's injury and therefore the defendant is the proper party from whom to seek redress." *Alexander v. PSB Lending Corp.*, 800 N.E.2d 984, 989 (Ind.Ct.App.2003), *trans. denied.*

■ Here, the Beattys attempted to bring a class-action lawsuit against the Insurance Defendants, whom the Beattys alleged acted in a concerted scheme with Liberty Mutual to deny UM/UIM coverage under umbrella policies similar to the Beattys'.[4] However, assuming the Beattys' allegations are true, the Beattys have standing against the Insurance Defendants only insofar as the Beattys have standing against Liberty Mutual, the only named defendant that could have caused the Beattys injury. *See id.* As their claim against Liberty Mutual must be dismissed pursuant to Trial Rule 12(B)(8), so too must their claims against the remaining defendants be dismissed for lack of standing. And the Beattys cannot create standing by seeking class-action certification. *See id.* at 991 ("simply framing a lawsuit as a class action does not remove Named Plaintiffs' burden to demonstrate standing: Even named plaintiffs who represent a class must allege and show that they personally have been injured ...." ) (citations and

quotations omitted). Nor can the Beattys maintain a class-action suit without having standing themselves. *See id.* at 994.

■ Finally, the Superior Court's dismissal of the Beattys' action was "with prejudice." Again, the court granted Liberty Mutual's and the Insurance Defendants' request for dismissal of the Beattys' action before the trial court certified the putative class. For clarification, we note that the prejudicial dismissal applies only to the Beattys and not to the putative class. *See, e.g., Schwarzschild v. Tse,* 69 F.3d 293, 297 n. 5 (9th Cir.1995) (recognizing that "several circuits have held that a decision rendered by the district court before a class has been properly certified and notified is not binding upon anyone but the named plaintiffs"), *cert. denied,* 517 U.S. 1121, 116 S.Ct. 1355, 134 L.Ed.2d 523 (1996); *West v. Health Net of the Northeast,* 217 F.R.D. 163, 177–78 (D.N.J.2003) (holding that, where the named plaintiffs' claims were moot before the class was certified, the claims of the putative class should be dismissed "without prejudice to their reassertion by an appropriate named plaintiff").

In sum, the Marion Superior Court properly dismissed the Beattys' action against Liberty Mutual because an action that is substantially the same is pending in the Marion Circuit Court. Further, having affirmed the Marion Superior Court's dismissal of the Beattys' action against Liberty Mutual, we must also conclude that the Beattys lack standing against the remaining named defendants, none of whom injured the Beattys. *See id.* at 989–

---

**4.** The Beattys assert that their claims against the Insurance Defendants are proper under the juridical link doctrine. As this court has explained, "caselaw has applied the juridical link doctrine in limited factual circumstances, namely, where 'all the defendants took part in

a similar scheme that was sustained either by a contract or conspiracy, or was mandated by a uniform state rule.' " *Alexander,* 800 N.E.2d at 992 (quoting *Payton v. County of Kane,* 308 F.3d 673, 678–79 (7th Cir.2002)).

94. As such, the Beattys lack standing to continue their action against the Insurance Defendants either individually or as a class action, and we affirm the Marion Superior Court's dismissal of the Beattys' complaint. We express no opinion on the Marion Circuit Court proceedings or whether the Beattys may seek to amend their complaint in that court.

Affirmed.

DARDEN, J., and BROWN, J., concur.