## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 26 2016, 8:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael C. Harris
Connor H. Nolan
Harris Welsh & Lukmann
Chesterton, Indiana

ATTORNEY FOR APPELLEE

Ethan S. Lowe
Blachly, Tabor, Bozik & Hartman, LLC
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Richard A. Brown and Janet Brown,

*Appellants-Plaintiffs,*

v.

City of Valparaiso, Indiana,

*Appellee-Defendant.*

October 26, 2016

Court of Appeals Case No.
64A03-1601-PL-138

Appeal from the Porter Superior Court

The Honorable William E. Alexa, Judge

Trial Court Cause No.
64D02-1501-PL-267

**May, Judge.**

Richard A. and Janet Brown (collectively, "the Browns") appeal the trial court's grant of the motion to dismiss filed by the City of Valparaiso, Indiana ("City") pursuant to Indiana Trial Rule 12(B)(8). We reverse and remand.

## Facts and Procedural History

The Browns own a home ("Brown Property") immediately adjacent to the Hotter Detention Facility, a stormwater detention/retention facility in Valparaiso, Indiana. On November 21, 2009, the Browns filed a complaint against the City under Cause Number 64D01-0911-PL-11902 ("First Complaint"), alleging inverse condemnation and deprivation of the Browns' civil rights under 42 U.S.C. § 1983[1] based on alleged damages the Browns suffered when their property flooded. Specifically, the Browns alleged:

> 10. On or about September 13, 2008, the City of Valparaiso experienced [a] significant amount of rain which caused the retention pond to fill to its capacity with water. Before the water rose to a level to spill over the dam, it flowed back onto Plaintiffs' property.
>
> 11. The improved and furnished and lower level of Plaintiffs' home situated on the property were covered in approximately 2 to 2.5 feet of water from the City's retention pond.

---

[1] The trial court granted summary judgment in favor of the City on the civil rights claim, and it is not at issue in this appeal.

12. To date, Plaintiffs have incurred $91,679.12 in out-of-pocket damages as a result of the flooding of their property with water from Defendant's retention pond.

13. Because of the significant amount of water that entered Plaintiffs' home on or about September 13, 2008, there has been a significant loss to the fair market value of their home. Plaintiffs are required to disclose the property's potential to flood to any prospective purchasers.

14. Plaintiffs will continue to incur costs in order to correct the damages which were caused by the invasion of water onto Plaintiffs' property. Specifically, Plaintiffs are still battling recurrent mold as a result of the water which entered their home.

* * * * *

21. As a proximate result of the design, construction, operation, and maintenance of the retention pond, Plaintiffs' property was damaged by the flood waters described in this complaint. Plaintiffs are therefore entitled to recover damages from the City under the Indiana Constitution.

22. Defendants' [sic] actions have resulted in the taking of Plaintiffs' private property for public use pursuant to Defendant's power of eminent domain.

23. Since the date of the entry of water onto Plaintiffs' land and continuing to the date of the filing of this action, Defendants have not paid Plaintiffs any compensation for the taking of their property, nor have Defendants made any offers of compensation for said property.

24. Further, to date, Defendant has failed to institute eminent domain proceedings relating to the taking of Plaintiffs' property, so that damage to Plaintiffs' property could be assessed.

25. Moreover, Plaintiff has incurred, and will continue to incur appraisal, attorney, and other fees, costs, disbursements, and expenses not yet known or ascertained, in an amount that cannot be presently calculated and that are recoverable under I.C. 32-24-1-14 and 32-24-1-16.

(Appellee's App. at 13-15.) The Browns sought damages in the amount of "just compensation for the taking of and damage to Plaintiffs' property" and "Plaintiffs' costs of suit, including litigation costs and attorney's fees[.]" (*Id.* at 17.)

[3] On March 1, 2010, the Browns amended the First Complaint to add a negligence claim against the City, alleging:

36. The City of Valparaiso negligently designed, constructed, operated and/or maintained said retention pond and spillway such that the level of the spillway of said retention pond is approximately two to three feet higher in elevation than the Plaintiffs' adjacent property, so that the water flowing into the retention pond will flood on to the Plaintiffs' property before it crests and flows over the dam.

37. The City had actual or constructive knowledge of the conditions described above by reason of land surveys that were conducted by or on behalf of the City of Valparaiso.

38. As a direct and proximate result of the Defendant, City of Valparaiso's, negligent design, construction, operation, and/or

maintenance of said retention pond and dam spillway, on or about September 13, 2008, said retention pond filled to its capacity with water and before the water rose to a level to spill over the dam, it flowed back onto Plaintiffs' property.

39. As a further result of the Defendant, City of Valparaiso's, negligence, Plaintiffs' [sic] sustained damage to their property and incurred expenses for removal, salvage, and repair of their damaged property.

(*Id*. at 25-26.)[2]

[4] On December 13, 2012, the trial court held a bench trial regarding the Browns' inverse condemnation claim alleged in the First Complaint. At trial, the Browns introduced evidence the Brown Property flooded a total of three times – once in September 2008, and twice before that date.[3] On February 17, 2013, the trial court issued an order rejecting the Browns' claim of inverse condemnation in the First Complaint. Regarding the issue of whether the City's actions constituted a taking, the trial court found and concluded:

> Most of the facts related to this issue are not in dispute. The Hotter Water Detention Facility was completed in 1987 and it was built to the required standard of withstanding a one hundred

---

[2] Both parties reference a nuisance claim as part of the First Complaint, but the second amendment to the First Complaint including those particular allegations is not included in the record.

[3] The dates of the two previous alleged floodings are not in the record before us. During trial the Browns "identified two other ponding events before the 2008 flooding, but could not say they came from the facility." (Appellants' App. at 80.)

year rain.[4] Plaintiffs' property flooded one time in September 2008 when the City of Valparaiso received a two hundred to five hundred year rain storm. Plaintiffs' witness, David McCormick, speculated that the Plaintiffs' property would flood with a ten year rain. That has not been the experience. The Hotter Facility was completed twenty-five years ago. The property has flooded one time, that being when the City of Valparaiso received a two hundred to five hundred year rain storm, a storm the size of which the facility was never intended to handle.

* * * * *

Defendants [sic] also allege that the City's failure to comply with the Indiana Department of Natural Resources (IDNR) regulation makes what happened here a taking of Plaintiffs' property. If the City violated any IDNR regulations, that would be evidence of negligence but has no relevance on the issue of taking.

While neither Indiana nor federal law require permanent flooding for a taking to have occurred, they both require more than one instance of flooding or inevitably recurring flooding. One flooding in twenty-five years does not rise to that level.

---

[4] The Browns explain, citing *Brown v. City of Valparaiso*, 64A03-1308-PL-332 (Ind. Ct. App. April 10, 2014), *trans. denied*:

> A storm rated "X number" -year, such as a 100-year storm or 500-year storm, is calculated based on the chances of that type of storm occurring in a given year. A 100-year storm has a one-percent (1%) chance of occurring each year; a 500-year storm has a two-tenths of one-percent (0.2%) chance of occurring. It does not necessarily mean that a 500-year storm only occurs once every 500 years.

(Br. of Appellants at 11 n.2) (citations omitted).

> The Court concludes that there has been not [sic] taking of the Plaintiffs' property by the City and denies Plaintiffs' claim for inverse condemnation.

(Appellant's App. at 53-4) (footnote added). The trial court certified its order for interlocutory appeal so the Browns could file an appeal. On appeal, our Court affirmed the trial court's decision denying the Browns' claim for inverse condemnation, and our Indiana Supreme Court denied transfer of the issue. *Brown v. City of Valparaiso*, 64A03-1308-PL-332 (Ind. Ct. App. April 10, 2014), *trans. denied*.

[5] On December 17, 2014, the Browns' attorney contacted the City's counsel and indicated:

> This letter is to inform you and the City of Valparaiso that Richard and Janet Brown have experienced two additional floodings on their property by reason of the backup of the Hotter Detention Facility. The first occurrence was in July or August 2013, and is verified by the photograph attached to this letter with the arrow pointing to the water accumulation around the barn-type shed in the Brown's [sic] backyard. The second occurrence was in August of this year when Valparaiso experienced a short duration rain, flooding also is demonstrated by the photograph within the garden next to the shed. Both of these photographs depict floodings in the area that Dick Brown experienced flooding on his property after the Facility was constructed but before the September 2008 flooding which was the subject matter of our recent litigation on the issue of taking.
>
> This makes a total of 5 floodings on the Brown property from and after the time the Facility was constructed in 1987. We believe that this is more than sufficient frequency to designate

that the Brown property has been "taken" by the City of Valparaiso. We will renew our efforts to impose this taking status unless we promptly hear that you agree that the property has been taken by the City.

(Appellees' App. at 38.) At the time that letter was sent, the public nuisance and negligence actions from the First Complaint were still pending before the trial court.

[6] On January 15, 2015, the Browns filed a complaint against the City for inverse condemnation under Ind. Code § 32-24-1-16 ("Second Complaint") under Cause Number 64D02-1501-PL-267. The Second Complaint alleged:

17. On two or more occasions after the Facility was completed, but before September of 2008, the Browns observed "ponding" of water on their property in the vicinity of their storage barn/shed. Trees along the common property line of the Brown Property with the City's Facility blocked Browns [sic] view to the east and north into the City's property, so that the Browns could not determine whether the ponding on their property was caused by a backup of water from the City's Facility. The Browns had no knowledge at that time that the City's Facility was constructed at such a high level as to cause stored storm water from the Detention Facility to back up onto their property.

18. The Browns first became aware that their property was subject to flooding from backed up storm water from the Detention Facility in the middle of September, 2008 when in excess of 6 inches of rainwater over a weekend was dumped into the Koselke watershed and blocked by the U-shaped dam of the City's Facility. As a result, approximately 18 inches of water entered the lower living area of their home, ruining drywall, trim, doors, flooring, insulation, electrical outlets, water heater,

furnace, household furniture and other personal property contained in the Brown family room, bar/recreation room, office, storage area and bathroom; all to the Plaintiffs [sic] damage and out-of-pocket expenses in excess of $70,000.00.

19.  The Plaintiffs brought an unsuccessful inverse condemnation action against the City alleging a taking of the Plaintiffs' property.  Plaintiffs were permitted to bring a tort claims action against the City for Plaintiffs' damage caused by the City's negligence.  The rationale of the Court of not finding a taking was that one flooding in 25 years was not a sufficient flooding frequency to justify a declaration of a taking of the [P]laintiffs' property by the City.

20.  The Plaintiffs appealed the non-taking decision of the Trial Court Judge to the Indiana Court of Appeals, who affirmed the trial court judge on a basis that he had the discretion under the facts to make that finding.  Plaintiffs [sic] petition to transfer to the Indiana Supreme [Court] was also unavailing since that Court refused to accept transfer.

21.  Following the trial court's determination in December 2012 that one flooding in 25 years was not sufficient to justify a taking, the Brown Property experienced two additional flooding episodes.  The first occurring about September 18, 2013, and the second occurring August 22, 2014.  In both instances, City storm water invaded the Brown property in the vicinity of the Plaintiffs' storage barn/shed and in each instance the Plaintiffs were able to verify that this flooding was the result of back up from the City's Detention Facility.

22.  Significantly, these two most recent floodings extended into the Brown Property from the same area as occurred on the two or more occasions observed between 1988 and 2008 as reported by the Plaintiffs.  The Plaintiffs now believe that those original

floodings occurred as a result of back up from the City's Detention Facility, making a total of at least 5 floodings experiences by the Plaintiffs since 1988 - or about one flooding every 5.2 years, with three occurring in the last 6 years, or one every two years. In each instance of flooding, the City imposed its gathered storm water on the Brown Property for storage for the public purpose of preventing flooding of downstream property south and east of the Detention Facility.

23. Once the City flooded the Brown Property, as occurred in September of 2008, the City refused to purchase the Brown Property or any portion of it. Further, the City failed to prevent the Brown Property from recurrent flooding when the upper portions of the Detention Facility were used to store storm water. The City is now repeatedly using the Brown Property to store the City's gathered storm water without payment of just compensation to the Browns. The effect of the City's conduct is a taking of a portion of the Brown Property, including their residence, in the form of an imposed flood easement.

24. The Plaintiffs have informed the City of these five floodings, requesting a takings declaration, but the City has failed to acknowledge a taking. The City's response is to continue to treat these floodings as tort only.

(*Id*. at 45-8.) The Browns requested the trial court

declare that the Brown Property, or portions thereof, have been taken for public use and that the Plaintiffs' damages be assessed under the eminent domain laws of Indiana, and that a judgment in favor of the Plaintiffs['] and against the City be entered for those damages, plus costs including expert witness fees and attorney fees as provided under Indiana law[.]

(*Id*. at 48.)

[7]     On April 10, 2015, the City filed a motion to dismiss the Browns' Second

Complaint pursuant to Indiana Trial Rule 12(B)(8), which allows a trial court to

dismiss an action if the "same action [is] pending in another state court of this

state." On June 23, the trial court held a hearing on the City's motion to

dismiss. On August 28, the trial court granted the City's motion to dismiss.

The trial court found and concluded:

> In this case, the complaints currently pending between the
> Plaintiffs and Defendants are the negligence[5] case in Cause
> Number 64D01-0911-PL-1902 [First Complaint] and the inverse
> condemnation claim in Cause Number 64D02-1501-PL-267
> [Second Complaint]. The identities in both cases are the Browns
> and City of Valparaiso, Indiana. The subject matter in [First
> Complaint] is that the City of Valparaiso acted negligently with
> regard to their water detention facility built [sic] which caused
> the water to overflow into the Browns' yard rendering it
> condemned. In [Second Complaint] the subject matter is that the
> City inadvertently took part of the Browns' land when the facility
> the City built to hold storm water over flowed causing the
> Browns' land to be partially condemned.
>
> To prove negligence in the [First Complaint], the Plaintiffs need
> to prove negligence, [sic] out of pocket expenses and *causation*.
> To prove inverse condemnation in the [Second Complaint] the
> Plaintiffs need to prove the frequency of flooding, fair market
> value of property before and after the alleged taking and
> *causation*. Both cases require proof of causation. If either court

---

[5] The status of the Browns' nuisance claim at this point in the proceedings is unclear from the record before
us.

determined the outcome of causation, the other cause number would be affected by this determination.

The remedies to both causes are also very similar. If the Plaintiffs were to win their negligence suit, they would be awarded monetary damages. If the Plaintiffs were to win their inverse condemnation suit, they would also be award [sic] a monetary amount for just compensation for the land the City inadvertently took. While the Plaintiffs state in their Response that they are seeking to impose liability on the City with their inverse condemnation claim, this would result in a monetary reward and could affect the outcome of the negligence suit. The Plaintiffs stand to be compensated twice, which is prohibited by Indiana law.

Finally, the Plaintiffs do state a valid explanation as to why they did not seek the relief which the Defendant's [sic] suggest. Under Appellate Rule 8, a trial court loses jurisdiction to alter or affect its final judgment when the County Clerk certified the completion of the Record to the Indian[a] Court of Appeals. *Layne v. State*, 361 N.E.2d 170, 172 (App. 1st Dist., 1977). In August 2013, the trial court's judgment in [First Complaint] was final. Furthermore, the Plaintiffs could have sought relief under Trial Rule 60(B)(2) alleging newly discovered evidence but this motion would have had to be made within a year of the final judgment, which time has passed.

The identities of the parties and the subject matter are substantially similar enough to where the outcome of one case would affect the outcome of the other. The Plaintiffs do have new flooding dates which would create a new cause of action to which the Plaintiffs should not be denied access to the courts. However, the Court finds that this is not the proper time to bring such an action as one determination would affect the other.

(Appellants' App. at 11-13) (footnote added).

[8] On September 29, 2015, the Browns filed a motion to correct errors. They alleged:

> 1. The Court erred in determining that the damages sought in the negligence case would overlap and compensate the plaintiffs twice for the same damages the plaintiffs seek in the condemnation case. The subject matter, remedies, and damages sought or available in each case are distinctly different. There are simply no overlapping or duplicative damages.
>
> 2. It is error for the Court to determine that there is a common issue of causation between the negligence case and the condemnation case justifying a T.R. 12(B)(8) dismissal. The causation in each case is different.
>
> 3. It is error to deny the Browns access to the court of the State of Indiana under Article 1, Section 12 of the Indiana Constitution where a cause of action exists and the Browns seek a remedy.

(*Id.* at 77.) The trial court held hearings on the matter on December 10 and 16, 2015. On December 21, 2015, the trial court denied the Browns' motion to correct error. This appeal ensued.

# Discussion and Decision

[9] Indiana Trial Rule 12(B)(8) provides for dismissal of an action when "[t]he same action [is] pending in another state court of this state." As a general rule, when an action is pending in an Indiana court, all other Indiana courts must

defer to that court's jurisdiction over the case. *Beatty v. Liberty Mut. Ins. Group*, 893 N.E.2d 1079, 1084 (Ind. Ct. App. 2008). We review *de novo* a trial court's dismissal of an action pursuant to T.R. 12(B)(8).[6] *Id.*

[10] In our review, we determine whether the parties, subject matter, and remedies are precisely or substantially the same. *Id.* We consider "not whether parts of one lawsuit are the same or similar to parts of the other, rather, each lawsuit as a whole should be examined." *In re Stephen L. Chapman Irrevocable Trust Agreement*, 953 N.E.2d 573, 578 (Ind. Ct. App. 2011), *trans. denied*. Whether two actions are the same "depends on whether the outcome of one action will affect the adjudication of the other." *Kentner v. Ind. Pub. Employers' Plan, Inc.*, 852 N.E.2d 565, 570 (Ind. Ct. App. 2006), *reh'g denied*, *trans. denied*.

## I. Parties

[11] The Browns argue the parties named in the First Complaint and Second Complaint are not the same for the purposes of T.R. 12(B)(8) "merely because the caption contained the same names." (Br. of Appellants at 30.) Instead, the Browns claim, the parties are different in the two actions because the parties "have a different status in each case." (*Id.*)

---

[6] The Browns do not argue the trial court erred when it denied their motion to correct error, and our standard of review for appeal of a motion to correct error directs us to consider the underlying order, here the order granting the City's motion to dismiss pursuant to T.R. 12(B)(8). *See In re Paternity of H.H.*, 879 N.E.2d 1175, 1177 (Ind.Ct.App.2008) (review of motion to correct error includes review of underlying order).

[12]    In *Kentner*, 852 N.E.2d at 571, like in this case, there were two lawsuits involving the same parties filed contemporaneously in two separate courts. In his federal litigation, Kentner sued the Indiana Public Employers' Plan ("IPEP") as a former employee; but in the state litigation, Kentner pursued his rights as an Indiana citizen under the Access to Public Records Act ("APRA"). We held considering only the names in the captions of the cases was "an overly simplistic analysis of the situation." *Id.* We noted in his federal litigation Kentner's claim was related to his employment but in his state claim he was "enforcing the same right available to any citizen seeking public records." *Id.* Thus, while the parties were the same in name, they were not the same for the purposes of a T.R. 12(B)(8) motion to dismiss because Kentner's "status" was different in each lawsuit. *Id.*

[13]    The Browns argue they, like Kentner, have a different status in the legal actions at issue in this case. They assert:

> In the tort action [First Complaint] the Browns are suing as victims of tort, and the City is an alleged tortfeasor who has injured the Browns through some wrongful act or omission. In the inverse condemnation action [Second Complaint], the Browns are owners of private property who allege that the City has taken an interest in their property for public use without paying just compensation. The City is a governmental entity who has allegedly exercised its right of eminent domain without complying with the constitutional mandate to pay for the property.

(Appellants' Br. at 31.) However, the Browns' reliance on *Kentner* is misplaced. Our court in *Kentner* based its decision upon the types of rights asserted by Kentner - in his federal litigation, he argued for rights available to him as an employee; but in his state litigation, he asserted rights available to all citizens. Here, both of the Browns' claims are based on their rights as property owners. The legal claims used by the Browns in asserting these rights does not change their status as a party relative to T.R. 12(B)(8) as described in *Kentner*.

## II. Subject Matter of Litigation

[14] The Browns contend the trial court erred when it determined the subject matters of the two actions were the same based on their shared element of causation. The Browns claim "[a]ny overlap between the two cases is on minor issues, not substantive questions." (Br. of Appellants at 23.) Again, they rely on *Kentner* for this argument.

[15] In *Kentner*, our court reversed the trial court's dismissal of Kentner's state claim based on T.R. 12(B)(8), holding, in part, the subject matter of Kentner's federal and state claims were not the same. In his federal claim, Kentner alleged "he was fired by [his former employer] after providing advice to [his former employer] and [IPEP] that [IPEP's] conduct violated Indiana law." *Kentner*, 852 N.E.2d at 569. As part of his federal litigation, Kentner requested certain documents from IPEP pursuant to the APRA. IPEP refused to produce the documents, and Kentner filed a claim in state court requesting the court to compel IPEP to produce the documents pursuant to APRA. We held the federal and state claims did not have the same subject matter because "[i]t is

readily apparent that section 1983 and APRA are two separate and independent laws, and provide two separate and independent causes of action.  Thus, it necessarily follows that the subject matter of the two lawsuits is not the same." *Id*. at 572.  As in *Kentner*, the subject matter of the Browns' two actions arise from some of the same facts, but the subject matter is different.

[16]     The Browns' First Complaint and Second Complaint have a common underlying fact - the flooding of the Brown Property in September 2008. However, the First Complaint focuses on the September 2008 flooding event exclusively and requests compensation for damage to the house caused by the flooding.  The Second Complaint asserts the September 2008 flooding, in addition to the two subsequent floodings in 2013 and 2014, as evidence a taking of the Brown Property has occurred.  *See Arkansas Game & Fish Comm'n v. United States*, 133 S.Ct. 511, 522-3 (2012) ("[W]hile a single act may not be enough, a continuance of them in sufficient number and for a sufficient time may prove [a taking].  Every successive trespass adds to the force of the evidence.") (*quoting Portsmouth Harbor Land & Hotel Co. v. United States*, 260 U.S. 327, 329-30 (1922)). Further, the remedies for the two claims are not the same.[7]

---

[7] Additionally, the determination of the Browns' negligence claim involving the September 2008 flooding has no bearing on the court's decision of the inverse condemnation claim in the Second Complaint because it is only the subsequent floodings which may be used to establish the taking, since the trial court decided in its order regarding the inverse condemnation claim in the First Complaint that the September 2008 flooding was not a taking.

### III. Remedies

A T.R. 12(B)(8) dismissal is not warranted if the remedies sought by the two claims "are not substantially the same." *Kentner*, 852 N.E.2d at 573. The requested remedy in the Browns' negligence claim in the First Complaint only involved those damages, specifically expenses incurred for "removal, salvage, and repair of their damaged property." (Appellee's App. at 26.) In contrast, in an inverse condemnation proceeding,

> all damages, present or prospective, that are the natural or reasonable incident of the improvement to be made or work to be constructed . . . must be assessed. Damages are assessed once and for all, and the measure should be the entire loss sustained by the owner, including in one assessment all injuries resulting from the appropriation.

*Chicago & Ind. Coal Railway Co. v. Hunter*, 128 Ind. 213, 220, 27 N.E. 477, 479 (1891). Damages in an inverse condemnation action "must be assessed at the time of the taking." *City of Elkhart v. No-Bi Corp.*, 428 N.E.2d 43, 48 (Ind. Ct. App. 1981). Thus, as the court has already determined the September 2008 flooding event did not constitute a taking, the damages in the Second Complaint only address the damages incurred when a taking occurred, either in 2013 or 2014, if the trial court finds such a taking occurred for the purposes of inverse condemnation. The remedies are not the same, nor do they doubly compensate the Browns.

Although the parties are the same, the subject matter and remedies are not the same. Therefore, the trial court erred when it granted the City's motion to

dismiss pursuant to T.R. 12(B)(8).[8] *See Sheets v. Shoemaker*, 670 N.E.2d 945, 947-9 (Ind. Ct. App. 1996) (reversing T.R. 12(B)(8) dismissal when parties were the same but subject matter and remedies were different), *trans. denied*.

# Conclusion

[18] The trial court erred when it granted the City's motion to dismiss pursuant to T.R. 12(B)(8) because the subject matter and remedies requested under the First Complaint and Second Complaint were different. Accordingly, we reverse and remand.

[19] Reversed and remanded.

Baker, J., and Brown, J., concur.

---

[8] The Browns also assert the trial court denied their Constitutional right to open access to courts by granting the City's motion to dismiss. As we reverse the trial court's decision, we need not address this issue.