**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ROBERT W. ROCK**
Jones Wallace, LLC
Evansville, Indiana

ATTORNEY FOR APPELLEE:

**J. DAVID ROELLGEN**
Kolb Roellgen & Kirchoff, LLP
Vincennes, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MARK A. VALDES and JAMES H. VALDES, ) | |
| ) | |
| Appellants-Plaintiffs, ) | |
| ) | |
| vs. ) | No. 42A01-1302-PL-88 |
| ) | |
| VINCENNES BUILDING and SAFETY ) | |
| COMMISSION and the CITY OF VINCENNES, ) | |
| ) | |
| Appellees-Defendants. ) | |

APPEAL FROM THE KNOX CIRCUIT COURT
The Honorable Sherry B. Gregg Gilmore, Judge
Cause No. 42C01-1112-PL-650

**November 27, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Mark Valdes[1] appeals the trial court's judgment affirming an order by the City of Vincennes Building and Safety Commission to demolish a hotel owned by him. We affirm.

**Issues**

The restated issues before us are:

I.      whether Mark timely sought judicial review of the demolition order;

II.     whether the trial court properly denied Mark's motion to dismiss;

III.    whether Mark was denied due process of law;

IV.     whether the trial court properly affirmed the demolition order;

V.      whether the trial court properly denied Mark's motion to correct error; and

VI.     whether the trial court properly required Mark to post a bond of $500,000 in order to stay execution of the demolition order during the pendency of this appeal.

**Facts**

On April 5, 2007, the State Department of Homeland Security, Division of Fire and Building Safety ("DHS"), filed an action for a preliminary and permanent injunction against Zoheir Maarouf, owner of the Executive Inn in Vincennes, for multiple alleged violations of fire and building safety codes, following a fire at the property. The action was filed in the Knox Superior Court. The DHS's action sought an injunction to force the

---

[1] James Valdes was involved during the proceedings below but died while they were ongoing; he is still listed as a named party in this appeal.

closure of the Executive Inn until such time as necessary repairs to the building were made. On April 17, 2007, the Knox Superior Court granted a preliminary injunction closing the Executive Inn. Later, however, the Executive Inn was permitted to partially re-open while repairs to it were made. Maarouf sold the Executive Inn to Mark and James Valdes in July 2007, and the Valdeses were substituted as defendants in the action. On September 29, 2008, DHS filed a "Proposed Plan of Correction" for the Executive Inn. Appellee's App. p. 6.

On August 11, 2009, the City of Vincennes ("the City") filed a separate action in Knox Superior Court against the Valdeses, seeking an injunction forcing them to vacate the Executive Inn based on multiple building safety code violations alleged to have been found during a City inspection conducted by the City's building inspector, Chris Eisenhut. On August 14, 2009, the City's action was consolidated into the pre-existing DHS case. On August 19, 2009, the Knox Superior Court entered a preliminary injunction requiring the full closure and vacating of the Executive Inn until further order of the court, while permitting the Valdeses, their relatives, and hired repairmen onto the premises to make repairs. The court also noted in this order that the Valdeses had failed to submit a plan of correction for the property, despite having been ordered in June 2008 to provide one. The Valdeses finally submitted such a plan on February 18, 2010.

On November 3, 2010, while the action before the Knox Superior Court was still pending, Eisenhut, acting in his official capacity, issued an "Order of Demolition," stating that the Executive Inn needed to be demolished because it was an "unsafe building" as defined by Indiana law, "as it is in an impaired structural condition that makes it unsafe to

3

the public, is a fire hazard and is a hazard to public health." Appellant's App. p. 188. This order required demolition of the Executive Inn within twenty days, subject to the Valdeses' right to contest the order before the City's Building and Safety Commission ("the Commission"). On November 30, 2010, and December 7, 2010, the Commission conducted several hours of hearings at which the Valdeses contested the demolition order.

On January 18, 2011, the Commission conducted public deliberations and orally announced that it would give the Valdeses until December 1, 2011 to repair the Executive Inn. On February 22, 2011, the Commission entered a written order expressly modifying the demolition order, providing the Valdeses until December 1, 2011 "to make all necessary repairs, remediation, and correction of Code violations to the Executive Inn . . . ." Id. at 39. The order concluded that, if the Valdeses failed to prove that they had made the needed repairs to the Executive Inn by December 1, 2011, as evidenced by a certificate from a licensed architect, that "the Commission shall reconvene a public meeting to consider further Orders, which may include an Order of Demolition of the Executive Inn." Id. at 40.

The Valdeses failed to submit the required architect's certificate indicating that they had repaired the Executive Inn by December 1, 2011. The Commission convened a hearing on that date to determine the fate of the Executive Inn. Eisenhut testified regarding the Valdeses' failure to repair the property. In fact, the Valdeses had not applied for any permits with respect to any repair work until October 26, 2011; this permit request was for electrical and drywall work only, which would have fallen well short of the work needed on the property. The Valdeses' attorney was not allowed to cross-examine Eisenhut, but

4

James Valdes and his attorney discussed why they believed it would be inappropriate to order immediate demolition of the Executive Inn.[2]  James stated that although the property was mortgage-free, it was impossible to obtain financing for repairs of the property with the threat of demolition hanging over it.  He also stated that he had hopes that an incoming new mayoral administration for the City, set to take office in January 2012, would be more receptive to his concerns.  He further alleged that the current mayor and a partner had a particular interest in tearing down the Executive Inn so that an entirely new hotel could be built on the land, and that one of the Commission members had been overheard in public discussing this interest.  James also claimed never to have received a definitive list of repairs that needed to be made to the building in order for it not to be demolished.

At the conclusion of this hearing, the Commission voted to allow the demolition of the Executive Inn to proceed.  On December 9, 2011, the Valdeses filed a complaint for judicial review of the Commission's order in the Knox Circuit Court ("the trial court").  James Valdes passed away in February 2012.  On April 27, 2012, Mark Valdes filed a "Motion to Dismiss," asserting that the City's demolition action should be dismissed because it conflicted with the already existing action in Knox Superior Court that had been brought by the DHS and later joined in by the City.  The City also filed a motion to dismiss, claiming that Mark did not timely file a challenge to the Commission's ruling of February 22, 2011.  The trial court held a hearing on these motions on October 9, 2012, and

---

[2] Unfortunately, there are many inaudible portions noted on the transcript of this hearing.

subsequently denied both of them. On December 12, 2012, the trial court issued an order affirming the Commission's demolition order.

On December 14, 2012, having not yet received a copy of the trial court's December 12, 2012 ruling, Mark filed a motion requesting an evidentiary hearing. On December 21, 2012, the trial court denied Mark's motion, stating in part "that all parties agreed that the Court would proceed with a ruling in this cause without further hearing." App. p. 321. On January 9, 2013, Mark filed a motion to correct error. The motion was accompanied by an affidavit from Mark, alleging in pertinent part that Eisenhut had interfered with or refused to issue permits for repairs to the Executive Inn and had threatened potential contractors that they would never work in the City again if they performed work for the Valdeses. The affidavit also restated the assertion that the previous mayor of the City had wanted the land where the Executive Inn was located for the building of a new hotel for him and his partner, and that one of the Commission members was aware of this fact.

On January 29, 2013, the trial court denied Mark's motion to correct error. Mark timely initiated an appeal from this ruling and sought a stay of enforcement of the demolition order pending appeal. The trial court conducted a hearing on this request, and on May 29, 2013, it entered an order staying enforcement of the demolition order pending appeal, but also requiring Mark to post an appeal bond of $500,000. Mark filed a motion with this court challenging the appeal bond requirement, requesting that it be eliminated altogether or modified to a "very modest amount . . . ." On July 29, 2013, the motions panel of this court denied Mark's motion. The case now comes before us fully briefed.

**Analysis**

6

## I. Timeliness of Request for Judicial Review

Before addressing Mark's arguments, we first address the City's claim that the Valdeses did not timely request judicial review of the Commission's ruling(s) and that the request for judicial review filed on December 9, 2011, was far too late. Indiana's Municipal Unsafe Building Act ("the Act")[3] is codified at Indiana Code Chapter 36-7-9. Indiana Code Section 36-7-9-8 provides in part:

> (a) An action taken under section 7(d) or 7(e) of this chapter is subject to review by the circuit or superior court of the county in which the unsafe premises are located, on request of:
>
>> (1) any person who has a substantial property interest in the unsafe premises; or
>>
>> (2) any person to whom that order was issued.
>
> (b) A person requesting judicial review under this section must file a verified complaint including the findings of fact and the action taken by the hearing authority. The complaint must be filed within ten (10) days after the date when the action was taken.

Indiana Code Section 36-7-9-7 in turn provides that a "hearing authority" must hold a hearing with respect to a demolition order issued by a municipal "enforcement authority"; in the present case, the Commission was the "hearing authority" and the City's building inspection department, through Eisenhut, was the "enforcement authority." Subsection (d) of Section 36-7-9-7 specifically provides:

> At the conclusion of any hearing at which a continuance is not granted, the hearing authority may make findings and take action to:

---

[3] This is not an "official" name of the Act.

(1) affirm the order;

(2) rescind the order; or

(3) modify the order, but unless the person to whom the order was issued, or counsel for that person, is present at the hearing, the hearing authority may modify the order in only a manner that makes its terms less stringent.

The City contends that, under Section 36-7-9-8(b), the Valdeses were required to file a request for judicial review within ten days of either the Commission's oral ruling of January 18, 2011, or its written ruling of February 22, 2011. We disagree. The Commission's rulings of January 18, 2011 and February 22, 2011, modified Eisenhut's earlier demolition order by providing the Valdeses with until December 1, 2011 to make necessary repairs to the Executive Inn, rather than immediately proceeding to demolition. The Commission did not make a final decision to immediately proceed with the Executive Inn's demolition until December 1, 2011. It is that final demolition decision that Mark now wishes to challenge, and his request for judicial review filed eight days thereafter was timely. We would agree, however, that Mark is now precluded from indirectly challenging any part of the February 22, 2011 order, such as the length of time given to remediate the property, or the fact that the order did not completely rescind the demolition order, or that the order allegedly did not provide adequate notice of what precisely the Valdeses needed to do repair-wise in order to avoid demolition. See Quaker Properties, Inc. v. Department of Unsafe Bldgs. of City of Greendale, Ind., 842 N.E.2d 865, 868 (Ind. Ct. App. 2006) (holding that party who does not timely seek review of unsafe building order waives right to judicial review of the order), trans. denied.

8

## II. *Motion to Dismiss*

We next address whether the trial court properly denied Mark's motion to dismiss. On this point, Mark first invokes Indiana Trial Rule 12(B)(8), which "permits dismissal of an action when '[t]he same action [is] pending in another state court of this state.'" Beatty v. Liberty Mut. Ins. Group, 893 N.E.2d 1079, 1084 (Ind. Ct. App. 2008). However, what Mark was really seeking by his motion to dismiss was to dismiss the underlying administrative action by the City. Needless to say, it would ordinarily be odd for a civil plaintiff to invoke a Trial Rule 12 defense to dismiss his or her own civil action; clearly, Mark did not want outright dismissal of his petition for judicial review before the trial court, which would have resulted in the demolition order remaining intact. On its face, Trial Rule 12(B)(8) would not seem to apply to this situation.

Regardless, we will address Mark's argument that the principles underlying Trial Rule 12(B)(8) should have precluded the City's administrative action to demolish the Executive Inn, given the pre-existing Knox Superior Court case initiated by the DHS and later joined in by the City which sought to force the Valdeses to repair the property. "Trial Rule 12(B)(8) implements the general principle that, when an action is pending in an Indiana court, other Indiana courts must defer to that court's authority over the case." Id. This principle applies when the parties, subject matter, and remedies sought are precisely the same in two different actions, and it also applies when they are only substantially the same. Id. "Courts observe this deference in the interests of fairness to litigants, comity between and among the courts of this state, and judicial efficiency." Thacker v. Bartlett, 785 N.E.2d 621, 625 (Ind. Ct. App. 2003).

9

Here, although the parties and subject matter of the Knox Superior Court action and the City's administrative action are similar, the remedies sought in the two actions are quite different and not substantially the same. In fact, it appears that the remedy sought in the administrative action—demolition—was not available in the Knox Superior Court action. First, the DHS's authority for bringing its action was derived from Indiana Code Chapter 22-12-7, which permits the DHS to bring administrative and/or trial court actions to enforce the State's fire and building safety codes. Indiana Code Section 22-12-7-7 lists the sanctions that the DHS may seek to impose against owners (or controllers) of property that are in violation of the fire and building safety codes, which include requiring the owner to cease and correct the violation(s), requiring persons to leave and stay away from an area affected by the violation, revoking permits or licenses associated with property, and/or imposing civil fines against the owner. Nothing in the statute authorizes the DHS to seek demolition of a property that is in violation of the fire and building safety codes.

Second, the City relied upon the Act in both issuing the demolition order and in filing the Knox Superior Court action. The Act permits municipalities to adopt the Act by ordinance for direct enforcement by municipalities to address the danger of "unoccupied structures that are not maintained and that constitute a hazard to public health, safety, and welfare." Ind. Code § 36-7-9-4.5(a). Indiana Code Section 36-7-9-5 delineates the actions and orders a municipality's "enforcement authority" may issue with respect to unsafe buildings. One such order is for the "demolition and removal of an unsafe building if: (A) the general condition of the building warrants removal; or (B) the building continues to require reinspection and additional abatement action after an initial abatement action was

10

taken pursuant to notice and an order . . . ." I.C. § 36-7-9-5(a)(7). It is under this subsection that Eisenhut had the authority to administratively issue the original demolition order. Such administrative orders for demolition are subject first to review by a municipal "hearing authority" under Indiana Code Section 36-7-9-7, and then to judicial review under Indiana Code Section 36-7-9-8.

In addition to purely administrative action, subject to judicial review, a municipality "may bring a civil action regarding unsafe premises in the circuit, superior, or municipal court of the county." I.C. § 36-7-9-17(a). This statute further provides:

> A civil action may not be initiated under this section before the final date of an order or an extension of an order under section 5(c) of this chapter requiring:
>
> (1)    the completion; or
>
> (2)    a substantial beginning toward accomplishing the completion;
>
> of the required remedial action.

I.C. § 36-7-9-17(b). This language contemplates that the bringing of a civil action is intended to force a recalcitrant property owner to comply with already-existing administrative orders. It is under this statute that the City was authorized to file the Knox Superior Court action. That action specifically was an "emergency" action to force the Valdeses to comply with previous orders by Eisenhut to immediately vacate the Executive Inn and to prevent anyone from entering it, which the Valdeses were ignoring. App. p. 283. Ordering the vacating of an unsafe building and preventing anyone else from entering

11

such a building are additional actions a municipality's "enforcement authority" may take under Indiana Code Section 36-7-9-5.

Indiana Code Section 36-7-9-17 also specifies that trial courts "may grant one (1) or more of the kinds of relief authorized by sections 18 through 22 of this chapter." I.C. § 36-7-9-17(a). This limited grant of authority seems to indicate that trial courts are not necessarily empowered to issue any order that a municipality could have issued by itself under Indiana Code Section 36-7-9-5. No language in sections 18 through 22 refer to a trial court having the same authority as a municipality has under Section 36-7-9-5, nor do any of them mention a trial court having the authority to order the demolition of a building.

The Knox Superior Court action was always aimed towards trying to make the Executive Inn safe and to force the Valdeses to make needed repairs and not to demolish it, consistent with the extent of trial court authority regarding unsafe buildings and fire and building safety regulations under Indiana Code Chapter 36-7-9 and Indiana Code Chapter 22-12-7. Thus, the demolition remedy sought in the purely administrative action by the City was not substantially the same as, and appears not even to have been a possibility in, the Knox Superior Court action. The principles underlying Indiana Trial Rule 12(B)(8) did not preclude the City from administratively seeking demolition of the Executive Inn, notwithstanding the Knox Superior Court action.

Mark also invokes the election of remedies doctrine as a basis for precluding the City's demolition action, claiming the City had chosen to participate in the Knox Superior Court action and thus could not bring a separate administrative demolition action. The election of remedies doctrine is equitable in origin and is intended to prevent excessive and

12

repetitive litigation. McMichael v. Scott County School Dist. No. 2, 784 N.E.2d 1067, 1070 (Ind. Ct. App. 2003). "The doctrine applies when a party who has two co-existing but inconsistent remedies elects to pursue one remedy to a conclusion rather than sue on the other remedy." Id. If there are concurring effectual remedies, choosing one remedy and prosecuting it without interruption excludes all other remedies. Id.

Here, it is not clear that the City uninterruptedly prosecuted the Knox Superior Court action to a definitive conclusion or that the two actions were necessarily conflicting. Having been provided with copies of the CCS in the Knox Superior Court case and some, but not all, of the pertinent motions and rulings in that case, the purpose of that case was to compel remediation to the Executive Inn and/or to prohibit any persons from entering the property, except for workers or the Valdeses, until the building was brought up to code. At one point a permanent injunction was sought against the Valdeses, but it does not appear that one was ever entered. Rather, there was a preliminary injunction, which was subsequently modified.

At the time that Eisenhut filed his demolition order, the City notified the Knox Superior Court of it. After that date, in December 2010, there was further action in the Knox Superior Court case consisting of the Valdeses filing a motion asking the court to find that the Executive Inn "is in compliance with all applicable fire and building safety codes . . . ." Appellee's App. p. 15. The Knox Superior Court denied this motion on January 11, 2011. There is no further action listed in the CCS after this date, aside from attorney appearances and withdrawals of appearances. It thus appears that the City pursued the Knox Superior Court action until such time as it became apparent that the Valdeses

13

were not going to adequately remediate the problems at the Executive Inn despite having several years to do so, at which time it switched tactics and sought demolition of the hotel, using an administrative procedure that does not seem to have been available to the Knox Superior Court. We do not believe the City's actions violated the election of remedies doctrine.

Finally, Mark argues that the City's actions violated the separation of powers doctrine. Article 3, Section 1 of the Indiana Constitution states, "The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial: and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided." "The judiciary is one of the three co-equal branches of government and its independence is essential to an effective running of the government." State v. Monfort, 723 N.E.2d 407, 411 (Ind. 2000). Mark asserts that the City's administrative action infringed upon the independence of the Knox Superior Court.

We observe that it has long been held that the separation of powers doctrine of Article 3 does not apply to municipalities and their agencies. Willsey v. Newlon, 161 Ind. App. 332, 333, 316 N.E.2d 390, 391 (1974). We accept that a municipal-level administrative agency cannot take action that conflicts with or purports to supersede the actions of a State trial court. See Indiana Dep't of Natural Res. v. Newton County, 802 N.E.2d 430, 433 (Ind. 2004) (holding county could not pass ordinances purporting to regulate State agency activity). As we have discussed, however, there is no inherent conflict between the Knox Superior Court action and the City's administrative action, given

14

the different remedies sought in the two actions and the fact that demolition could only be sought via the administrative action.[4]

Whether framed as an issue of comity, election of remedies, or separation of powers, there was no bar to the City seeking demolition of the Executive Inn through administrative proceedings under the Act because the action did not irreconcilably conflict with the pre-existing Knox Superior Court action. The trial court properly denied Mark's motion to dismiss.

### III.  Due Process

Next, we address Mark's claim that his procedural due process rights were violated by the City, the Commission, and the trial court in the issuance and eventual affirmance of the demolition order. The requirements of due process are not set in stone and may vary based on the circumstances, in accordance with the balancing test adopted by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976):

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural safeguard would entail.

---

[4] If the Knox Superior Court had found the Executive Inn to be adequately repaired, then the City's seeking to demolish the building in a separate administrative action would be troublesome, but the court made no such finding.

The most basic requirement of procedural due process is the right to be heard at a meaningful time and in a meaningful manner. Parker v. Indiana State Fair Bd., 992 N.E.2d 969, 978 (Ind. Ct. App. 2013). This court has held that, as a general rule, a municipality's adherence to the Act's procedures in addressing unsafe buildings affords a property owner sufficient due process protection. Starzenski v. City of Elkhart, 659 N.E.2d 1132, 1139 (Ind. Ct. App. 1996), trans. denied, cert. denied. Although a property owner's interest in preservation of his or her property is undeniable, governments have a converse and very strong police power interest in enforcing building safety regulations, even to the extent of requiring the demolition of buildings, for purposes of public health, safety, or welfare. See 409 Land Trust v. City of South Bend, 709 N.E.2d 348, 351 (Ind. Ct. App. 1999), trans. denied.

Mark alleges that the City's February 22, 2011 order modifying Eishenhut's demolition order to provide the Valdeses until December 1, 2011, to repair the Executive Inn failed to provide him adequate notice of what needed to be done to save the property from demolition, because it did not provide a detailed list of precisely what repairs needed to be performed. As we held earlier, however, the Valdeses waived the ability to challenge any alleged deficiencies in the February 22, 2011 order by not timely seeking judicial review of that order. They were not entitled to wait until the December 1, 2011 deadline passed, and only then attempt to raise a claim that the February 22, 2011 order was inadequate. Moreover, it appears that there was a list of needed corrective action that was prepared during the Knox Superior Court proceedings that the Valdeses never completed, thus giving notice of the numerous deficiencies of the hotel.

16

Mark also contends that the hearing conducted on December 1, 2011, did not meet due process requirements because the Valdeses were not permitted to cross-examine Eisenhut and were not permitted to present any evidence as to their attempts to remediate the property. Although it is true that the Commission prevented the Valdeses' attorney from cross-examining Eisenhut, the transcript of that hearing does not indicate that the Commission prevented the Valdeses from presenting evidence. Rather, after Eisenhut testified, one of the Commission members stated, "you've heard what the City has said and what the City Inspector has said, so, I guess that we'd like for you to respond to that and help us to understand your side." App. p. 200. The Valdeses' attorney and James then made lengthy statements to the Commission regarding efforts to obtain permits, unfruitful efforts to obtain funding to make needed repairs, claims that they did not have notice of what needed to be done to the property to make it acceptable, and expressing their hope that the incoming administration would be more fair to the Valdeses.

Also, the December 1, 2011 hearing represented the culmination of close to five years of litigation, beginning with the Knox Superior Court action initiated by DHS in April 2007. Despite numerous proceedings in that case, as well as two lengthy hearings before the Commission that resulted in it giving the Valdeses an additional ten months to repair the Executive Inn, they never were able to do so to the satisfaction of the DHS, the City, or the Knox Superior Court. Mark does not contend that any of the previous hearings or proceedings regarding the Executive Inn failed to comply with due process requirements. The Valdeses had multiple opportunities to argue the case.

17

Mark also fails to adequately explain how a more "formal" hearing on December 1, 2011, as he claims should have taken place, would have led to more time to attempt to rehabilitate the Executive Inn. The evidence is that the Valdeses did not even attempt to seek any permits for repair of the hotel until late October 2011—approximately eight months after the February 22, 2011 order was issued and just a little over a month before the deadline for fully repairing the building. The evidence also is clear that, even if those permits had been granted by Eisenhut as Mark argues they should have been, the work they would have authorized would have fallen well short of what was necessary to correct the multiple problems the building had. Even where there are alleged procedural defects in an administrative proceeding, such errors may be deemed harmless and do not per se require reversal of a ruling when the record clearly demonstrates that additional process would not have led to a different result. See Berzins v. Review Bd. Of Indiana Employment Sec. Div., 439 N.E.2d 1121, 1127-28 (Ind. 1982); Jones v. Housing Auth. of City of South Bend, 915 N.E.2d 490, 497 (Ind. Ct. App. 2009), trans. denied. Such is the case here.[5]

Finally, Mark suggests the trial court additionally denied him due process when it did not hold an evidentiary hearing on his petition for judicial review. We believe Mark

---

[5] We also note that, as a statutory matter, it is not clear that the Act required that there be any hearing with respect to the December 1, 2011 demolition order. Indiana Code Section 36-7-9-7(g) provides that if a hearing authority modifies an enforcement authority's order, "the hearing authority shall issue a continuous enforcement order . . . ." (Emphasis added). A "continuous enforcement order" is one that "can be enforced, including assessment of fees and costs, without the need for additional notice or hearing . . . ." I.C. § 36-7-9-2. Thus, when the Commission modified the City's original demolition order by providing the Valdeses an additional ten months to remediate the Executive Inn, it appears to have been a "continuous enforcement order" that could have been enforced without any additional hearing.

has waived this claim, or more accurately, invited any alleged error on this point. The doctrine of invited error prohibits a party from taking advantage of an error that he or she commits, invites, or which is the natural consequence of his or her own neglect or misconduct. Witte v. Mundy ex rel. Mundy, 820 N.E.2d 128, 133 (Ind. 2005). In denying Mark's motion to correct error and for an evidentiary hearing, filed after the trial court had already issued its ruling, the court noted that Mark's counsel had, in chambers and during the October 9, 2012 hearing addressing the parties' motions to dismiss, stated that no further hearings on the matter would be required. Although we cannot review what Mark's counsel said in chambers, the trial court specifically asked at the October 9, 2012 hearing whether there would be any need for "additional argument beyond today," and counsel responded that he had no plans for "any additional hearing and no evidence . . . based upon the progress of the case up to now." Tr. pp. 4-5. Counsel then argued, over the City's objection, that in order to fairly review the case the trial court would need to review the hearings from November 30, 2010 and December 7, 2010, but gave no indication that any further trial court hearing in the case was necessary. Counsel therefore invited the trial court to rule in this case without conducting an evidentiary hearing, and Mark cannot now complain about that alleged error.

We do acknowledge that counsel apparently changed his mind regarding the necessity of an evidentiary hearing after reviewing the recordings of the November 30, 2010 and December 7, 2010 hearings and believing them to be inaudible in large sections and finding that none of the exhibits introduced at those hearings had been preserved. We reiterate our earlier holding that Mark is precluded from seeking judicial review of the

19

February 22, 2011 order that resulted from the November 30, 2010 and December 7, 2010 hearings. Thus, the quality of the recording of those hearings and the lack of exhibits from them is now irrelevant. Indeed, it might have been easier to reconstruct what happened at those hearings if the Valdeses had immediately sought judicial review of the February 22, 2011 order rather than waiting until December 2011 to do so. The trial court's task here solely was to review the propriety of the December 1, 2011 order. Although in its rulings the court also referred to the earlier proceedings in this case, and the entire background of this case is indeed helpful in understanding the context of the final demolition order, there was no need for the trial court to conduct an evidentiary hearing to attempt to reconstruct the hearings that led to the February 22, 2011 order. As for the December 1, 2011 order, all the trial court needed to do to satisfy its review obligation was to re-examine the evidence upon which the Commission acted in issuing that order, which obligation was fulfilled by reviewing the recording and transcript of the December 1, 2011 hearing. See Kollar v. Civil City of South Bend, 695 N.E.2d 616, 620 (Ind. Ct. App. 1998) (holding trial court may satisfy its review obligation under the Act either by conducting an evidentiary hearing or by reviewing the evidence considered by the municipality), trans. denied. The manner in which the trial court conducted its judicial review did not violate due process.

### IV.  Trial Court's Ruling

Mark also argues that the trial court erred on the merits in denying his petition for judicial review. Indiana Code Section 36-7-9-8(c) states that a trial court should review a municipality's unsafe building action "de novo."  "De novo" as used in this statute "does not authorize a trial court to substitute its judgment for that of the agency below."  Id. at

20

619. Rather, a trial court should reverse a municipality's action only if it is "'(1) arbitrary, (2) capricious, (3) an abuse of discretion, (4) unsupported by the evidence or (5) in excess of statutory authority.'" Id. (quoting Uhlir v. Ritz, 255 Ind. 342, 345-46, 264 N.E.2d 312, 314 (1970)).

Mark's argument on this issue is brief, and aside from the due process arguments we have already rejected, boils down to a claim that it was premature to order demolition of the Executive Inn because there exists a reasonable probability that it can and will be fully repaired. It is true that when "a building can be reasonably repaired, it may be improper to order demolition of the property." 409 Land Trust, 709 N.E.2d at 350. However, when a property owner has been given ample opportunity to repair a property but fails to do so within a reasonable period of time, demolition of the property may be appropriate. Id. This is precisely the situation here, as we have discussed. The Valdeses had several years in which to adequately rehabilitate the Executive Inn to the point where it could once again be a viable business property, or even habitable, but failed to do so. The City need not wait indefinitely for the needed repairs to be made.

Even assuming the Valdeses should have been issued the permits they requested in October 2011, that clearly was a case of being a day late and a dollar short. Even if the work requested by the permits had been performed, it would have been insufficient to make the Executive Inn conform to all the necessary codes. Although there have been findings and discussions during the course of the proceedings that the Executive Inn is not "unsafe" as long as it is not occupied, and it is not currently occupied, a long-vacant building that is not up to code poses significant public health and safety risks with respect to vagrancy,

21

neighboring buildings, and first responders who might have to address fires or crimes at the property. The Act specifically includes in its definitions of unsafe buildings one that is vacant and "not maintained in a manner that would allow human habitation, occupancy, or use under the requirements of a statute or an ordinance . . . ." I.C. § 36-7-9-4(a)(6). We cannot find error in the trial court's ruling that the Commission's December 1, 2011 order for demolition of the Executive Inn was not arbitrary, capricious, an abuse of discretion, unsupported by the evidence, or in excess of statutory authority.

## V. Motion to Correct Error

We now address Mark's argument that the trial court erred in denying his motion to correct error. We review rulings on motions to correct error for an abuse of discretion. Scales v. Scales, 891 N.E.2d 1116, 1120 (Ind. Ct. App. 2008). Much of the motion raised issues we have already addressed and rejected, such as the trial court's not holding an evidentiary hearing, its denial of the motion to dismiss, and that the Executive Inn purportedly was not "unsafe" because no one currently resided in it.

The remainder of the motion alleged the existence of newly discovered evidence, supported by affidavits from Mark and Timothy Minnette, a real estate agent. Motions to correct error based on the alleged existence of newly discovered evidence are disfavored. Id. To prevail upon a motion to correct error based on alleged newly discovered evidence, a party must:

> demonstrate that the evidence could not have been discovered and produced at trial with reasonable diligence; that the evidence is material, relevant, and not merely cumulative or impeaching; that the evidence is not incompetent; that [the party] exercised due diligence to discover the evidence in time

22

> for the final hearing; that the evidence is worthy of credit; and, that the evidence raises the strong presumption that a different result would have been reached upon retrial.

Matzat v. Matzat, 854 N.E.2d 918, 920 (Ind. Ct. App. 2006).

The alleged newly discovered evidence in this case relates almost entirely to claims that Eisenhut "stonewalled" attempts to repair the Executive Inn by refusing to issue work permits and/or by intimidating contractors who proposed to work on the building. Some of this alleged evidence was in fact related to the Commission during the December 1, 2011 hearing and, thus, was not "newly discovered"; it was already considered and rejected both the Commission and by the trial court in reviewing the Commission's demolition order. Other matters in Mark's affidavit relate to events dating back to 2009 through December 1, 2011, and it is unclear why such evidence could not have been discovered earlier and presented to the Commission. Finally, there is one example of alleged intimidation by Eisenhut that was not and could not have been discovered until after the December 1, 2011 hearing. However, it appears that this evidence was at best merely cumulative of other evidence of Eisenhut's alleged interference in the Valdeses' attempts to repair the Executive Inn. Moreover, it relates hearsay statements by third parties to the affiants of things Eisenhut allegedly said to the third parties, not things said to the affiants themselves. We do not believe the trial court was required to find such evidence to be either "worthy of credit" or that it raised a "strong presumption" that the result of either the Commission's December 1, 2011 hearing or the trial court's judicial review would have been different if such evidence had been presented. We cannot say the trial court abused its discretion in denying the motion to correct error.

## VI. Appeal Bond

The final argument Mark raises is that the trial court's required $500,000 appeal bond as a condition of staying demolition of the Executive Inn during the pendency of this appeal is excessive. A trial court's determination as to the amount of a bond as a condition of staying execution of a judgment during appeal will not be disturbed absent an abuse of discretion. Kocher v. Gertz, 824 N.E.2d 671, 675 (Ind. 2005). Additionally, our motions panel has already denied a request by Mark to reduce the amount of the appeal bond. Although a writing panel of this court is free to disagree with and reverse a decision by our motions panel, we generally are reluctant to do so in the absence of clear authority establishing that the motions panel erred as a matter of law. Oxford Fin. Group, Ltd. V. Evans, 795 N.E.2d 1135, 1141 (Ind. Ct. App. 2003).

Indiana courts often decline to address the issue of the amount of an appeal bond as part of a decision on the merits, finding the issue to be moot at that point in the case. See In re Guardianship of C.M.W., 755 N.E.2d 644, 651-52 (Ind. Ct. App. 2001). Moreover, Mark has not provided us with a transcript of the trial court hearing on the motion to stay execution and the City's request for an appeal bond requirement; we have before us "only the assertions in the parties' filed motions, responses, and attachments." See Kocher, 824 N.E.2d at 675. In such a situation, we cannot say that the trial court abused its discretion in fixing the amount of the appeal bond. See id.; Anthrop v. Tippecanoe School Corp., 156 Ind. App. 167, 173, 295 N.E.2d 637, 642 (1973). We thus decline to revisit the motions panel's decision not to reduce the amount of the appeal bond.

24

## Conclusion

Although Mark timely sought judicial review of the December 1, 2011 demolition order, he waived claims related to the adequacy of the February 22, 2011 order by not timely challenging that order. The trial court properly denied Mark's motion to dismiss because the administrative action for demolition of the Executive Inn did not irreconcilably conflict with the pre-existing Knox Superior Court action governing the property. Mark also has not established that he was denied due process with respect to the ultimate demolition order. He also has not demonstrated that the trial court erred in affirming the Commission's action, denying his motion to correct error, or requiring the posting of a $500,000 bond to stay enforcement of the demolition order pending appeal. We affirm in all respects.

Affirmed.

CRONE, J., and PYLE, J., concur.